

# NUMBER 13-19-00390-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**ROBERT JOHNNIE GARCIA,**                                 **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                    **Appellee.**

### On appeal from the 105th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Hinojosa and Perkes
### Memorandum Opinion by Chief Justice Contreras

Appellant Robert Johnnie Garcia was convicted of two counts of aggravated robbery, a first-degree felony. *See* TEX. PENAL CODE ANN. § 29.03. The jury assessed punishment at thirty-four years' imprisonment for each count, and the trial court ordered the sentences to run concurrently. On appeal, appellant contends that the trial court erred

by: (1) not allowing cross-examination about a witness's cooperation with the State and pending criminal charges; (2) admitting into evidence certain hearsay statements under the excited utterance exception; and (3) admitting into evidence recordings of phone calls purportedly made by appellant from jail. We affirm.

## I. BACKGROUND

Trial evidence established that two armed individuals wearing hats and hosiery over their faces robbed Pier 99, a restaurant in Corpus Christi, on the evening of July 30, 2017. David Perez, a bartender at Pier 99 that night, testified he was "100 percent" certain that appellant—a former employee at the restaurant—was one of the robbers. Perez stated that, during the robbery, appellant hit him in the back of the head and repeatedly threatened to "shoot everyone in the room." According to Perez, appellant said "he was going to shoot each one of us individually, one by one, if we couldn't open the safe" which was located under the cashier's counter. Perez testified that appellant "pistol-whipped" another restaurant employee, Freddie Frances Anderson, several times because Anderson was initially unable to open the safe. Surveillance video recordings of the robbery were entered into evidence.[1]

Perez acknowledged on cross-examination that he initially told police that the robber "resembled" appellant, but he did not tell police he was "100 percent sure" it was appellant. On re-direct examination, Perez clarified he told police that once he saw the surveillance video, he "knew by [the suspect's] walk that it was definitely [appellant]."

Mark Lennox, the restaurant's general manager, testified that he hired appellant

---

[1] The surveillance videos have not been included in the reporter's record. However, the parties do not dispute the content of the videos, and they are not necessary to our disposition of the issues raised. Therefore, we need not remand the case for supplementation of the record to include the videos.

as a cook roughly three to four months before the robbery and that appellant's employment was terminated about a week or two before the robbery.[2] Lennox stated that Anderson was working as the manager on duty on the night of the robbery. At around 11:00 p.m. that evening, Lennox received a call from Lydia Aispuro, a server at Pier 99, reporting that there had been a robbery and that police had been called. Lennox then called the restaurant's owner and went directly to the restaurant. Lennox testified:

> When I first arrived at the restaurant, all of the employees were in front of the building. Most of them were visibly shaking, shaken. Some were still crying. They had [Anderson] seated at the front door of the restaurant in a chair, and she was being tended to by some of the other employees. She also was still very, very shaken, very emotional. . . . She was still bleeding,[3] she kept apologizing to me that she wasn't able to do more, and she was just almost inconsolable.

Lennox testified that Anderson told him, without him asking, that appellant was one of the robbers. The trial court admitted the testimony over defense counsel's objection.

Claudia Curtis testified that she was working as an expeditor[4] at Pier 99 on the night of the robbery. She knew appellant because she had worked with him at the restaurant. Curtis testified that appellant was one of the robbers, and she saw him hit Anderson twice with his gun. Investigator Charla Hemerly of the Corpus Christi Police Department testified that "about five of the victims" told her at the scene that appellant was one of the robbers.

The State introduced recordings of collect phone calls purportedly made by

---

[2] On cross-examination, Lennox agreed with defense counsel that he fired appellant because appellant "didn't show up to work or something."

[3] Photographs entered into evidence show that Anderson had a cut on the back of her right hand. A police officer testified she also had head injuries.

[4] An expeditor is a worker that coordinates actions between cooks and wait staff in a restaurant. *Expeditor*, WIKIPEDIA, https://en.wikipedia.org/wiki/Expeditor (last visited Dec. 28, 2020).

appellant after he was jailed. Lieutenant Jay Worthington of the Nueces County Sheriff's Office stated that he is the custodian of records for the county jail and that he obtained recordings of calls associated with appellant's name and unique inmate identification number. Worthington could not identify the voices on the recordings, and he acknowledged that inmates will sometimes use another inmate's identification number to make a collect call. The trial court admitted the recordings into evidence over defense counsel's objection as to authenticity. In one recording,[5] appellant's name is provided as the inmate making the collect call. The inmate says that he is in "big trouble" for an "aggravated robbery" and states, "I don't know why I lost control of myself." He later says, "I've been on the run for ten days."

The jury found appellant guilty of two counts of aggravated robbery and acquitted him on a third aggravated robbery count.[6] The jury further found two enhancement paragraphs true, thereby elevating the minimum punishment for each count to twenty-five years' imprisonment. *See id.* § 12.42(d). Punishment was ordered as set forth above, and this appeal followed.

## II. DISCUSSION

Appellant's three issues all concern the trial court's rulings on the admission of evidence. We review such rulings for abuse of discretion. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). A trial court abuses its discretion when its decision falls outside the zone of reasonable disagreement. *Id.* If the evidentiary ruling is correct under any applicable theory of law, it will not be disturbed, even if the trial court gave a wrong

---

[5] Only one recording has been made a part of the appellate record.

[6] The three counts were identical except they alleged different victims. Appellant was convicted of the aggravated robbery of Anderson and of Perez. He was acquitted of the aggravated robbery of Aispuro.

4

or insufficient reason for the ruling. *Id.*

## A. Cross-Examination

By his first issue, appellant argues the trial court erred by not allowing his trial counsel to cross-examine Perez about a pending misdemeanor criminal charge and his cooperation with the State in exchange for his testimony.

The record reflects that, when the State called Perez as a witness at the end of the first day of trial, the following colloquy occurred outside the presence of the jury:

| | |
|---|---|
| [Defense counsel]: | And we get to cross-examine him that he has got a warrant out? |
| [Prosecutor]: | No, you don't. That's improper impeachment. |
| [Defense counsel]: | No, it's not. |
| [Prosecutor]: | Yes, it is. |
| [Defense counsel]: | How so? |
| [Prosecutor]: | It's not an adjudicated offense. He can't go into that. |
| THE COURT: | What warrant are you talking about? The fact that he was— |
| [Prosecutor]: | He's got a misdemeanor warrant. |
| THE COURT: | Oh. |
| [Prosecutor]: | And I would ask to have them not go into that, Judge. |
| THE COURT: | Are you doing a motion in limine at this time? |
| [Prosecutor]: | I am doing one in this— |
| [Defense co-counsel]: | I think he should be arrested. As officers of the court, we have to advise the Court that— |
| [Defense counsel]: | I think that's relevant. If he's got a warrant out, Judge, that's relevant to impeachment. That's not improper impeachment. |

5

| [Prosecutor]: | That is improper impeachment. Like, in the book it says that. |
| [Defense counsel]: | The offense is improper impeachment because he hasn't been adjudicated. But if he's got an active warrant out, that's relevant. |
| [Prosecutor]: | That's a part of not guilty until proven— |
| [Defense counsel]: | No, that's part of you've got a warrant out. |
| THE COURT: | I'm going to have to agree with the State on that one, sir. |

After a discussion with the attorneys regarding the precise time Perez would be available to testify, the trial court adjourned for the day.

The following day, Perez confirmed outside the presence of the jury that he had criminal charges pending against him, but he denied that the District Attorney "offered [him] any kind of leniency" in exchange for his testimony, and he denied that he gave his trial testimony with the hope of receiving leniency. The prosecutor stated on the record that "there's no deal." The trial court then remarked: "I think I've already made a ruling on the warrant and the misdemeanor. But as far—if there was a deal with the State, I would have allowed that in, but it doesn't sound like there is a deal for his testimony at this point."

Appellant notes that "the exposure of a witness's motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis v. Alaska*, 415 U.S. 308 (1974). He cites and summarizes several cases in which cross-examination was found to have been improperly limited. For example, in *Maxwell v. State*, the Texas Court of Criminal Appeals held that it was error for the trial court to refuse to allow cross-examination regarding the fact that a witness was on deferred adjudication community supervision because "the jury was entitled to hear evidence of [the witness's] deferred adjudication to decide the amount of weight and credibility to give to his

6

testimony." 48 S.W.3d 196, 200 (Tex. Crim. App. 2001). But the Court has since clarified that *Maxwell* should not be read so broadly as to mean that "the mere fact of probation status is always and inevitably sufficient to establish a witness's potential bias and motive to 'curry favor' with the authorities." *Irby v. State*, 327 S.W.3d 138, 151 (Tex. Crim. App. 2010). "The constitutional right to cross-examine concerning the witness's potential bias or prejudice does not include 'cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Id.* at 145 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). Instead, there must be "some logical relevance of the pending charge, probation or immigration status, or other alleged source of bias to the witness's testimony." *Id.* at 151.

The State contends that appellant's issue on appeal does not comport with his complaint at trial because, while the cases he cites concern an accused's constitutional right to confront witnesses, he did not explicitly reference the Confrontation Clause as a basis for admissibility at the trial court. *See Golliday v. State*, 560 S.W.3d 664, 670–71 (Tex. Crim. App. 2018) ("[I]n order to preserve an argument that the exclusion of defensive evidence violates constitutional principles, a defendant must state the grounds for the ruling that he seeks with sufficient specificity to make the court aware of . . . these grounds."); *Hailey v. State*, 87 S.W.3d 118, 122 (Tex. Crim. App. 2002) (noting that it violates "ordinary notions of procedural default" for a court of appeals to reverse a trial court's decision on a legal theory not presented to the trial court by the complaining party). Beyond arguing lack of preservation, the State does not address the merits of appellant's first issue in its brief.

Assuming but not deciding that appellant's issue was preserved and was not

forfeited by procedural default, we conclude that appellant has not shown any abuse of discretion. Defense counsel sought to impeach Perez with evidence that Perez had a misdemeanor criminal charge pending and had an agreement with the State to provide his testimony. But when seeking to impeach a witness with evidence of pending criminal charges, "the proponent must establish some causal connection or logical relationship between the pending charges and the witness's 'vulnerable relationship' or potential bias or prejudice for the State, or testimony at trial." *Carpenter v. State*, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998). There was no such causal connection or logical relationship shown in this case—in fact, the record does not contain any details whatsoever regarding the pending charge. Moreover, both Perez and the prosecutor explicitly stated that Perez was not offered or given any leniency in exchange for his testimony.

Though the constitutional right to confront witnesses encompasses "the opportunity to show that a witness is biased or that his testimony is exaggerated or unbelievable," a trial court "retains wide latitude to impose reasonable limits on such cross-examination 'based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant.'" *Irby*, 327 S.W.3d at 151 (quoting *Van Arsdall*, 475 U.S. at 679). We cannot say the trial court acted beyond that latitude by sustaining the State's objection in this instance. Appellant's first issue is overruled.

## B. Confrontation Clause

By his second issue, appellant contends that the trial court erred by overruling his objection to Lennox's hearsay testimony that Anderson told him appellant was one of the robbers. *See* TEX. R. EVID. 801(d) (providing that hearsay is an out-of-court statement

8

offered to prove the truth of the matter asserted and is generally inadmissible). The trial court admitted the testimony under the exception to the hearsay rule for excited utterances. *See* TEX. R. EVID. 803(2) (providing that "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused," is not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness).

On appeal, appellant appears to concede that Anderson's statement, as relayed to the jury at trial by Lennox, was an excited utterance under the rules of evidence. Rather, he argues the statement was "testimonial" and that its admission without the opportunity for cross-examination of Anderson therefore violated his Sixth Amendment right to confront witnesses. *See* U.S. CONST. amend VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."); *Crawford v. Washington*, 541 U.S. 36, 59 (2004) (holding that the Confrontation Clause bars admission of any "testimonial" out-of-court statement unless the declarant is unavailable and the defendant had an opportunity to cross-examine the declarant); *see also Davis v. Washington*, 547 U.S. 813, 822 (2006) (holding that a statement is testimonial if "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution").

The State again contends in part that appellant's issue does not comport with the objection made at trial and therefore has not been preserved. When the prosecutor first asked Lennox about what Anderson told him, defense counsel objected on hearsay grounds, and the trial court overruled the hearsay objection. Lennox then testified that Anderson told him appellant was one of the robbers, and defense counsel renewed his

objection, this time arguing: "I don't have the opportunity to confront and cross-examine [appellant's] accusers. That's a fundamental constitutional right that we enjoy as Americans." The trial court again overruled the objection.

The only objection made before Lennox gave the challenged testimony was on hearsay grounds. A hearsay objection does not preserve a Confrontation Clause complaint for purposes of appeal. *See Wright v. State*, 28 S.W.3d 526, 536 (Tex. Crim. App. 2000); *Eustis v. State*, 191 S.W.3d 879, 886 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). Moreover, "[i]f a defendant fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely, and any claim of error is forfeited." *Luna v. State*, 268 S.W.3d 594, 604 (Tex. Crim. App. 2008). Thus, even though defense counsel alluded to appellant's right to confront witnesses in his second objection, that objection arguably came too late to preserve his issue because Lennox had already answered the question. *See id.*

Assuming but not deciding that the issue was preserved and that the trial court erred by admitting the testimony, we conclude that any error was harmless. The improper admission of evidence will be rendered harmless if the same or similar evidence is admitted without objection at another point in the trial. *Coble v. State*, 330 S.W.3d 253, 282 n.82 (Tex. Crim. App. 2010); *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003); *see* TEX. R. APP. P. 44.2(a) ("If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment."). Here,

10

eyewitness Curtis testified that appellant was one of the robbers, and Hemerly testified without objection that "about five" people who were at the scene identified appellant as one of the robbers. The admission of Lennox's testimony regarding Anderson's statement was harmless because the same evidence was admitted without objection at another point in the trial. *See Coble*, 330 S.W.3d at 282 n.82; *Valle*, 109 S.W.3d at 509. The trial court's ruling did not contribute to appellant's conviction or punishment. *See* TEX. R. APP. P. 44.2(a). Appellant's second issue is overruled.

## C. Jail Phone Calls

By his third issue, appellant contends the trial court erred by admitting the jail phone recordings because (1) they were not authenticated, and (2) there was no predicate laid for their admission as business records.

At trial, defense counsel objected to admission of the recordings under Texas Rule of Evidence 901, which generally provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901. Rule 901 sets forth a "liberal standard for admissibility." *Fowler v. State*, 544 S.W.3d 844, 849 (Tex. Crim. App. 2018). "In a jury trial, it is the jury's role ultimately to determine whether an item of evidence is indeed what its proponent claims." *Butler v. State*, 459 S.W.3d 595, 600 (Tex. Crim. App. 2015). "[T]he trial court need only make the preliminary determination that the proponent of the item has supplied facts sufficient to support a reasonable jury determination that the proffered evidence is authentic." *Id.* Those facts may be established by circumstantial evidence. *Campbell v. State*, 382 S.W.3d 545, 549 (Tex. App.—Austin 2012, no pet.).

11

The State argues that defense counsel admitted that appellant made the phone calls, and therefore, appellant is estopped from now asserting a claim that his identity as the caller had not been proven at trial. *See Arroyo v. State*, 117 S.W.3d 795, 798 (Tex. Crim. App. 2003) (noting that "a party may be estopped from asserting a claim that is inconsistent with that party's prior conduct"). In particular, the State points to the following remark by defense counsel in his closing argument at the punishment phase: "You listened to the jail calls, and even on the jail calls [appellant] sounds worthy of redemption. He's apologizing to everybody."

Assuming but not deciding that appellant is not estopped from raising this issue, we nevertheless conclude that the evidence was sufficient to support a reasonable jury finding that the calls were in fact made by appellant. Appellant emphasizes that, though Worthington testified he is the custodian of records for the county jail, he could not identify the voices heard on the recording. When the disputed issue is the identity of a speaker on a recording, the Rule 901 requirement for authentication may be satisfied by a witness's "opinion identifying a person's voice . . . based on hearing the voice at any time under circumstances that connect it with the alleged speaker." TEX. R. EVID. 901(b)(5).[7] But that is not the only means by which a speaker's identity may be proved. *See id.*; *Campbell*, 382 S.W.3d at 549 (noting that the methods of authentication listed in Rule 901(b) are "non-exclusive"); *see also United States v. Ingraham*, 832 F.2d 229, 236 (1st Cir. 1987) ("[I]t is a well-settled proposition that someone familiar with the speaker's voice need not identify it before evidence of a call can be admitted."). Here, Worthington testified

_____

[7] A business record accompanied by a compliant affidavit is self-authenticating. TEX. R. EVID. 902(10). This rule does not apply here because the recordings were not accompanied by an affidavit.

that he obtained recordings of collect calls that were made from the jail, at the time appellant was housed at the jail, using appellant's name and unique inmate identification number. On the recording that is contained in the appellate record, appellant's name is used to identify the caller. Though Worthington could not exclude the possibility that another inmate might have used appellant's identification number to make a call, such a categorical exclusion was not necessary to establish authenticity. *See Butler*, 459 S.W.3d at 600. We conclude that the trial court did not err in admitting the recordings. Appellant's third issue is overruled.

### III. CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
30th day of December, 2020.